IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America,<br><br>vs.<br><br>Byron Lewis Pointer,<br><br>Defendant. | CASE NO.: 4:24-CR-00065-JD<br><br><br><br>ORDER |

This is a criminal prosecution for a felon in possession of firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Before the Court is Defendant Byron Lewis Pointer's ("Defendant" or "Pointer") Motion to Withdraw Guilty Plea. (DE 82.) The United States of America (the "Government") opposes the motion. (DE 86.) For the reasons below, Pointer's motion is denied.

## I. BACKGROUND

### A. Factual Background[1]

On January 2, 2023, officers with the Myrtle Beach Police Department ("MBPD") responded to a call about an altercation involving a firearm at a gas station in Myrtle Beach, South Carolina. (DE 78 at 21; DE 41 ¶ 17.) Law enforcement interviewed multiple witnesses and collected video from the location. (DE 78 at 21; DE 41 ¶¶ 17–20.) The officers discovered that Pointer had arrived at the gas station and had an altercation with another individual ("V1"), during which Pointer pulled a

[1] The factual background is taken, in part, from the government's summary of the evidence against Pointer, which Pointer agreed to at his guilty plea hearing (DE 78 at 23) and the Revised Presentence Investigation Report ("PSR") (DE 61), where Pointer has not objected except for a two-level enhancement under USSG §2K2.1(b)(1)(A).

bookbag from his vehicle, removed a firearm from that bookbag, and brandished the gun at V1. (DE 78 at 21–22; DE 41 ¶¶ 17–18.) V1 left the location but saw Pointer following a second individual ("V2"). (DE 78 at 22; DE 41 ¶¶ 17, 19.) V1 reapproached Pointer to intervene and punched Pointer. (*Id.*) V1 took the bookbag with the firearm from Pointer's car, left the scene, and called law enforcement. (DE 78 at 22; DE 41 ¶ 17.) Officers recovered the firearm—a Glock 9mm loaded with 9mm ammunition.[2] (DE 78 at 22; DE 41 ¶ 21.)

**1. Appointment of Counsel and Guilty Plea**

On April 2, 2024, Pointer was arrested and arraigned on charges arising from the gas station incident. The Court appointed Assistant Federal Public Defender Casey Riddle ("Riddle") to represent Pointer. (DE 17.)

On May 20, 2024, Pointer entered into a written plea agreement with the Government to plead guilty to Count 1. (DE 36.) On May 21, 2024, this Court conducted a change of plea hearing and accepted Pointer's guilty plea. (DE 38.)

**2. Post-Plea Letters and Alleged Ineffective Assistance of Counsel**

On July 11, 2024, the Clerk of Court docketed the first of a series of pro se letters from Pointer. (DE 45, 52, 53, 56, 62, 63, 66, 67, 68, 69.) These letters purport to raise concerns, among other things, about Riddle's representation of Pointer. On July 12, 2024, Riddle moved to determine she had an actual or potential conflict in

[2] An interstate nexus examiner with the Bureau of Alcohol, Tobacco, Firearms and Explosives determined that the firearms and ammunition from the incident met the definitions of firearms and ammunition under federal law and had traveled in and affected interstate commerce. (DE 78 at 22; DE 41 ¶ 27.)

the case.[3] (DE 46.) On July 22, 2024, the Court relieved Riddle and appointed attorney Thomas Jarrett Bouchette ("Bouchette") to represent Pointer. (DE 48, 49, 50.)

Pointer continued to file letters which stated, "it is my intent to withdraw my guilty plea." (DE 56 at 1.) Pointer also raised claims of ineffective assistance of his previous counsel. (DE 62.) On December 3, 2024, the Court held a status hearing. (DE 70.) At the hearing, Pointer said he wished to retain Bouchette as his attorney. (*Id.*) The Court directed Pointer to file any motions or objections to the PSR through Bouchette. (*Id.*)

On February 24, 2025, Pointer moved to withdraw his guilty plea. (DE 82.) Pointer contends, among other things, that

- "the guidance provided by counsel was not sufficient, and he did not have an understanding of the questions" (*id.* at 1),
- "the evidence represented against him would ultimately be insufficient to be proven guilty by a reasonable doubt" (*id.*); and
- "he felt coerced and ill-informed of the agreement as well as his likely sentencing range under the United States Sentencing Guidelines" (*id.* at 2).

Pointer also contends he is not satisfied with his current counsel—Bouchette.[4] (*Id.* at 2.)

[3] Although Pointer's letters question Riddle's performance, at the motion to withdraw his guilty plea hearing, Pointer argued for the first time that Riddle told him to answer *yes* ("keep agreeing") to the Court's questions during the plea colloquy.

[4] On December 13, 2024, Bouchette moved to be relieved as Pointer's counsel. (DE 73.) On December 16, 2024, the Court denied Bouchette's motion. (DE 75.)

### B. Procedural Background

Pointer was indicted on January 24, 2024, on two counts of felon-in-possession-of-firearm-and-ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), the first arising out of the gas station altercation (Count 1) and the second arising from a later trespassing incident (Count 2). (DE 3.) On May 20, 2024, Pointer entered into a written plea agreement with the Government to plead guilty to Count 1. (DE 36.) The Government agreed to move to dismiss Count 2 at sentencing. (*Id.* at 3–4.)

As indicated above, on May 21, 2024, this Court conducted a change of plea colloquy under Rule 11, Fed R. Crim. P. (DE 37, 38) and found Pointer guilty of Count 1 of the indictment. (DE 78 at 23.) On February 24, 2025, Pointer moved to withdraw his guilty plea under *United States v. Moore*, 931 F.2d 245 (4th Cir. 1991). (DE 82.) On April 16, 2025, this Court held a hearing on Pointer's motion and took the arguments of counsel under advisement.

## II. STANDARD

"A defendant awaiting sentencing does not have an 'absolute right to withdraw a guilty plea.'" *United States v. Mayberry*, 125 F.4th 132, 141 (4th Cir. 2025). Under Rule 11, a defendant may withdraw his guilty plea prior to sentencing only if he can "show a fair and just reason for requesting the withdrawal." Rule 11(d)(2)(B), Fed. R. Crim. P. A "fair and just reason" for withdrawing a guilty plea is one that either challenges the fairness of the Rule 11 proceeding or a promise or condition emanating from the proceeding. *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992). A

properly conducted Rule 11 colloquy "raise[s] a strong presumption that the plea is final and binding." *Lambey*, 974 F.2d at 1394.

The Fourth Circuit has identified six factors that courts should consider in determining whether the defendant has met his burden to show a "fair and just reason" supports withdrawal of his guilty plea:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

*Moore*, 931 F.2d at 248.

When a defendant bases his motion to withdraw his guilty plea on ineffective assistance of counsel, he "'must show that his counsel's performance fell below an objective standard of reasonableness, and that but for counsel's alleged substandard performance, there is a reasonable probability that [he] would not have pleaded guilty.'" *Padgett v. United States*, 302 F. Supp. 2d 593, 605 (D.S.C. Feb. 9, 2004) (quoting *United States v. Craig*, 985 F.2d 175, 179 (4th Cir. 1993)). Counsel's alleged ineffectiveness must thus be of "constitutional magnitude" to support a motion to withdraw a guilty plea. *Id.*

## III. DISCUSSION

Pointer contends that the Court should allow him to withdraw his guilty plea because he satisfies the *Moore* factors. (DE 82.) This Court disagrees.

### A. Knowing or Voluntary Plea of Guilt

The first factor under *Moore* is whether the defendant has offered credible evidence that his plea was not knowing or voluntary. *Moore*, 931 F.2d at 248. Pointer argues he did not understand the questions asked by the Court at his Rule 11 hearing, he had to consult with Riddle during the Rule 11 hearing, and Riddle's guidance was insufficient. (DE 82 at 1.) Yet Pointer's affirmations during the plea hearing undermine his position. "[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity' because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations omitted).

At the change of plea hearing, Pointer affirmed these facts—his satisfaction with his counsel (DE 78 at 5); confirmed his understanding of all rights being waived, (*id.* at 6–9); affirmed his understanding of the charge against him, what the Government must prove to support the charge, and the penalties he faced (*id.* at 9–11); and confirmed his discussion of the relevant sentencing Guidelines with counsel and how they might apply to his case (*id.* at 11–13). Pointer also confirmed that he was pleading freely and voluntarily. (*Id.* at 14–15, 20.) The Government summarized the terms of the plea agreement; Pointer confirmed this was the agreement he had signed, reviewed the agreement with Riddle before signing it, and understood the terms of the agreement before signing. (DE 78 at 15–19.)

Pointer stated he was guilty of being a felon in possession of a Glock 9mm firearm and 9mm ammunition on or about January 2, 2023. (*Id.* at 20–21.) The Government summarized the facts supporting the guilty plea, and Pointer admitted to the facts necessary to prove his guilt. (*Id.* at 21–23.) But Pointer believes these admissions should be ignored because

> the transcript of his guilty plea hearing shows at least two (2) instances in which the proceedings had to be paused for the Defendant to confer with Counsel due to questions about the Court's statements or questions.

(DE 82 at 1.) The Court instructed Pointer to do this if he did not understand a question, and Pointer did so. Pointer consulted with Riddle three times during the colloquy about parole, forfeiture, and whether anyone had promised him a particular sentence. (DE 78 at 12–13, 20.) Following consultation with Riddle, Pointer confirmed under oath that he understood the possible forfeiture he faced and that no one had promised him a specific sentence. (*Id.* at 13, 20.) Pointer offers no credible evidence from the hearing or otherwise showing that his plea was not knowing or voluntary. Thus, the first *Moore* factor counsels against withdrawal of Pointer's plea.

**B. Credible Assertion of Innocence**

Under the second *Moore* factor—credible assertion of legal innocence—Pointer suggests "that the evidence represented against him would ultimately be insufficient to be proven guilty by a reasonable doubt[.]" (DE 82 at 1.) To credibly assert his legal innocence, the defendant must "present evidence that (1) has the 'quality or power of inspiring belief,' and (2) tends to 'defeat the elements in the government's prima facie case' or to 'make out a successful affirmative defense.'" *United States v. Thompson-*

*Riviere*, 561 F.3d 345, 353 (4th Cir. 2009) (internal citations omitted). To prove its case against Pointer as to count one for felon-in-possession, the Government must show that: (1) on January 2, 2023, Pointer had been convicted of a felony; (2) on January 2, 2023, Pointer knew he had been so convicted; (3) Pointer knowingly possessed the firearm or ammunition at issue; and (4) the firearm or ammunition had traveled in interstate or foreign commerce sometime during its existence. *See Ruschky & Shealy, Pattern Jury Instruction for Federal Criminal Cases, District of South Carolina* 152–53 (2024 Online Ed.). Pointer does not question whether he was a felon or knew of his status on January 2, 2023. Pointer also does not challenge the Government's contention that the Glock and the related ammunition affected interstate or foreign commerce.

Instead, Pointer relies on his assertion that he did not actually or constructively possess the Glock.[5] (DE 82 at 1.) To begin with, Pointer's sworn statements at the plea hearing admitted he possessed the Glock and 9mm ammunition. (DE 78 at 20.) Pointer also said he agreed with the Government's summary of its evidence against him, which includes witness statements and video from the gas station. This summary included the fact that Pointer

> pulled a bookbag from his car, took out a firearm and brandished it at this first other individual. That individual then got into their car to leave, but saw Mr. Pointer follow a third individual who had arrived in the meantime into the store. The first individual then returned to intervene in whatever was about to happen and punched Mr. Pointer.
>
> At that point that first individual took the bag with the firearm, left the scene and called officers. Myrtle Beach Police Department recovered the

[5] Pointer's motion does not address the indictment's charge for possession of 9mm ammunition on January 2, 2023.

> firearm, which was a Glock 9 millimeter serial BXGF357 loaded with 9 millimeter ammunition.

(DE 78 at 21–22.) Pointer offers no exculpatory evidence to refute his admissions or to cast doubt on the veracity of the Government's evidence.[6] Thus, Pointer has not established a credible assertion of innocence; therefore, this factor counsels against withdrawal.

**C. Delay Between Plea and Motion to Withdraw.**

The third *Moore* factor asks if "there has been a delay between the entering of the plea and the filing of the motion." *Moore*, 931 F.2d at 248. In *Moore*, the Fourth Circuit found "Moore long delayed between the time of the pleas and the time of entering the motion to withdraw guilty pleas" when "[h]e waited six weeks before giving notice of his intent to move to withdraw his pleas." 931 F.2d at 248; *see also United States v. Davis*, 529 F. App'x 375, 380 (4th Cir. 2013) (two-month delay between entry of guilty plea and motion to withdraw plea could weigh in favor of denying motion); *United States v. Singleton*, No. 5:21-cr-00829-SAL, slip op. at 10–11 (D.S.C. Jan. 17, 2024), ECF No. 131 (denying defendant's motion to withdraw his Rule 11(c)(1)(C) plea after considering the *Moore* factors and finding that delay of three-and-a-half months in filing motion to withdraw plea weighed against defendant withdrawing his plea).

---

[6] At the motion to withdraw plea hearing, Pointer offered a letter (DE 88) purportedly from Kerrie Robinson, the mother of Pointer's child, in response to the second *Moore* factor. Pointer contends the statement in the letter that "Ryan Clark gave law officers a firearm to disguise [the] fact that he robbed and assaulted us both[,]" is credible evidence of his innocence. However, the statement does not refute any of the elements of Count 1, to which Pointer pled.

Here, Pointer moved to withdraw his guilty plea about nine months after pleading guilty. (*Compare* DE 82, *with* DE 37, *and* DE 38.) Pointer's significant delay in moving to withdraw his guilty plea weighs against his motion to withdraw.

**D. Effective Assistance of Counsel**

The fourth *Moore* factor is whether defendant has had close assistance of competent counsel. To prove a lack of close assistance of counsel, Pointer "must demonstrate that counsel performed deficiently and that, but for counsel's errors, the defendant would not have pled guilty and would instead have insisted on proceeding to trial." *United States v. Faris*, 388 F.3d 452, 459 (4th Cir. 2004). Pointer contends that

> he felt coerced and ill-informed of the agreement as well as his likely sentencing range under the United States Sentencing Guidelines. The Defendant asserts that he has expressed his displeasure [with his] prior lawyer, as well as his current appointment counsel.

(DE 82 at 2.) To begin with, the Court has already addressed whether Pointer's plea was voluntary under the first *Moore* factor, and so the Court will not address Pointer's coercion defense further. Pointer also complains about his current counsel—Bouchette—but any matters about Bouchette's competency are unrelated to Pointer's considerations at his guilty plea hearing. As for Pointer's claim that he felt ill-informed about his likely sentencing range, the Court had this discussion with Pointer:

> THE COURT: All right, Mr. Pointer, let's talk about the sentencing guidelines then. Have you talked to your lawyer about the sentencing guidelines?

> THE DEFENDANT: Yes, sir, but a little, but I -- it was just kind of difficult with me understanding how that works, because this is my first time with a federal charge.
>
> THE COURT: All right. So then in your discussions, did you guys talk about how it might apply in your case?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. So let me tell you a couple of things. Do you understand that the Court will not be able to determine the guideline sentence for your case until after the presentence report has been completed and you and the government have the opportunity to challenge the facts reported by the probation officer? Do you understand that?
>
> THE DEFENDANT: Yes, sir.

(DE 78 at 11.) The Court expanded on Pointer's likely sentence by asking him these questions:

> THE COURT: Mr. Pointer, do you understand that if the sentence is more severe than you expected, you still will be bound by your plea and have no right to withdraw it. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> ***
>
> THE COURT: All right. Mr. Pointer, has anyone made any promise, other than the plea agreement, that induced you to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: All right. Has anyone made any prediction, prophecy or promise to you as to what your sentence is going to be?
>
> (Defendant confers with counsel.)
>
> THE DEFENDANT: No.

(DE 78 at 13, 20.) Pointer has shown no dereliction by Riddle advising him on his sentencing guideline at the guilty plea stage. And rightfully so, because Pointer's guideline range was unknown then. Instead, Pointer was advised two months later—

in the revised PSR—that his guideline range was 140 to 175 months' imprisonment. "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Brady v. United States*, 397 U.S. 742, 757 (1970). Accordingly, the fourth *Moore* factor counsels against withdrawal.

**E. Prejudice to the Government/Waste of Judicial Resources**

As for the final *Moore* factors—whether withdrawal will cause prejudice to the government, and whether it will inconvenience the court and waste judicial resources—Pointer contends,

> The Government has taken no action(s) in reliance upon the Defendant's initial plea of guilty.
>
> ***
>
> No additional inconvenience or use of judicial resources will occur by allowing the Defendant to withdraw [his] guilty plea and proceed to trial than it would have if Defendant had originally asserted his right to a speedy trial.

(DE 82 at 2.) The Court agrees in part. Nevertheless, there is some inherent prejudice and waste of judicial resources that would result if Defendant were to withdraw his plea. The case has been pending for over a year, and Pointer's guilty plea happened eleven months ago. The only thing left is sentencing. Even if Pointer had met his burden as to any of the other *Moore* factors, the prejudice to the Government is notable. The Government argues that

> Were Pointer allowed to now withdraw his guilty plea, the Government would then have to prepare for a multi-count trial, including by filing pretrial motions, working with the multiple witnesses and victims

> involved, and preparing for jury selection and trial. Furthermore, the incidents that underlie the counts of the indictment occurred some one-and-a-half to two years ago. The time that has passed since those incidents means that some testimony may be less readily available than it was two years ago, or even ten months ago when Pointer entered his guilty plea.

(DE 86 at 14.) These factors weigh against Pointer being allowed to withdraw his guilty plea. *See United States v. Bangura*, 765 F. App'x 928, 932 (4th Cir. 2019) (per curiam) ("Prejudice to the Government and a waste of judicial resources are inherent in allowing the withdrawal of a guilty plea . . . .").

## IV. CONCLUSION

For these reasons, the Court denies Pointer's motion to withdraw his guilty plea (DE 82).

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
April 23, 2025